UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DANIELLE MACMILLAN

        Plaintiff,

      v.                    **REPORT AND RECOMMENDATION**
                                  **07-CV-0959 (LEK)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

      Plaintiff Danielle MacMillan brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

      For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 7, 2009.
[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as

1

## II.    Background

On March 24, 2005, Plaintiff protectively filed applications for SSI and DIB,

claiming an onset date of July 20, 2003 (R. at 33, 25).[3] Plaintiff alleges disability due to

a low IQ, dysthymic disorder,[4] and a seizure disorder. Her applications were denied

initially on June 22, 2005 (R. at 25). Plaintiff filed a timely request for a hearing on

September 6, 2005 (R. at 32).

On September 21, 2006, Plaintiff appeared *pro se* before the ALJ (R. at 16). The

ALJ considered the case *de novo* and, on October 17, 2006, issued a decision finding

Plaintiff not disabled (R. at 24). The ALJ's decision became the Commissioner's final

decision in this case when the Appeals Council denied Plaintiff's request for review on

July 20, 2007 (R. at 5-8). On September 17, 2007, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ

erred in failing to fully develop the record at the hearing and in determining whether

Plaintiff met Listing 12.05C.

## III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

---

if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General
Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[3] Citations to the underlying administrative record are designated as "R."
[4] Mild depression. *Dorland's* at 590.

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458,

---

[5] This five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status requirements of the Act through December 31, 2008 (R. at 22); (2) Plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 20, 2003 (R. at 22); (3) Plaintiff's dysthymic disorder and borderline intellectual functioning were severe (R. at 22); (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I; (5) Plaintiff has no exertional limitations; (6) Plaintiff "has moderate personal and social limitations and mild social limitations [sic] as a result of her mental functioning" (R. at 23); (7) Plaintiff's "medically determinable impairments could not reasonably be expected to produce [her] disabling symptoms" (R. at 23); (8) Plaintiff is capable of performing her past work as a daycare worker, both as Plaintiff actually performed it and as it is generally performed in the national economy (R. at 24). Ultimately, the ALJ found that Plaintiff was not under a 'disability' as defined by the Act, from July 20, 2003, her alleged onset date, through the date of his decision (R. at 24).

**2.  Plaintiff's Claims:**

Plaintiff argues that the Commissioner's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that: a) the ALJ failed to fully develop the record at the hearing; b) the ALJ erred in failing to find Plaintiff met or equaled Listing 12.05; c) the Appeals Council erred by not

remanding based on new evidence; and d) Plaintiff was not made fully aware of her right to counsel at the hearing.

### a)  The ALJ Failed in His Duty to Develop the Record at the Hearing

Plaintiff argues that the ALJ failed to fully develop the record at the hearing. Plaintiff's Brief, p. 8. Defendant responds by arguing that the ALJ fully questioned Plaintiff as to her impairments and past work. Defendant's Brief, pp. 21-22.

"The ALJ has a duty to adequately protect a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)) (emphasis in original). "A hearing may be characterized as 'unfair' where the ALJ failed to discharge his obligation to develop a complete record." Chamberlain v. Leavitt, 2009 WL 385401, at *7 (N.D.N.Y. Feb. 10, 2009).

Although Plaintiff currently has the benefit of an attorney, she appeared *pro se* at her hearing on September 21, 2006 (R. at 109). The hearing began on 8:15 a.m. and concluded at 8:21 a.m., making it approximately six minutes long[6] (R. at 111-18). The hearing covered eight pages of the record. Id. Plaintiff was the sole witness and testified for approximately seven of those eight pages (R. at 112-18).

Many of the ALJ's questions focused on why Plaintiff stopped working as a day care provider and why she could no longer perform that work (R. at 115-17). Plaintiff testified that she stopped working because she moved out of the area, would not want to return to that position, and could not perform that work because there were no jobs

---

[6] Plaintiff's brief states the hearing was eight minutes twenty-one seconds. Plaintiff's Brief, p. 5. It is unclear how Plaintiff arrived at this time. The Court will apply the time stated in the hearing transcript (R. at 111, 118).

available (R. at 116-17). Because of Plaintiff's testimony concerning her previous

position, the ALJ stated:

> "[w]ell, just so you understand, the application that you filed asking for
> Disability Benefits is only available to people who are incapable of working
> at their old job or any other job. So, I just want to make it crystal clear,
> from your perspective, why exactly are you filing for Disability if you
> believe you can work, except for the fact that there are no jobs nearby?"

(R. at 116). Plaintiff responded because she "ha[d] trouble reading [and] trouble writing"

(R. at 116). The following constitutes ALJ's entire line of questioning concerning

Plaintiff's limitations in reading and writing:

> Q: Now, you said you have trouble reading and writing. Are you able --
> A: Yeah.
> Q: -- to read and write basic, simple English?
> A: Yes. And if I --
> Q: So, when you say you have trouble, you mean only with complex or
>    detailed words?
> A: Yeah, or sometimes, I might read like backwards, like I don't
>    understand it. Or, like --
> Q: I'm sorry, what, what don't you understand?
> A: Just like, like, I need help to fill out all of this SSI stuff. My . . . aunt
>    helped me, like read it to me, and filled out all the paperwork -- or,
>    helped me --
> Q: I see.
> A: -- fill out -- fill it out.

(R. at 117). Indeed, the foregoing represents the ALJ's entire line of questioning

concerning any of Plaintiff's limitations.

    The ALJ also failed to inquire into either Plaintiff's borderline intellectual

functioning diagnosis or dysthymic disorder diagnosis. The ALJ simply ascertained that

Plaintiff was under no medical treatment and was not taking any medications (R. at

117). The ALJ failed to inquire into the specifics of Plaintiff's job as a day care provider

(R. at 115). The ALJ merely established that Plaintiff "watch[ed] kids" "from like five-year-olds to like 12-year-olds" (R. at 115).

Although the Court is aware that Plaintiff testified she could perform her previous work, given that Plaintiff appeared *pro se* and the ALJ merely glossed over Plaintiff's limitations, the Court cannot say that the ALJ adequately discharged his affirmative duty to develop the record (R. at 116); See Cruz, 912 F.2d at 11-12 ("The scant record herein, which consists of a thirteen-page transcript, reveals a host of lost opportunities to explore the facts."); Almonte v. Apfel, 1998 WL 150996, at *8 (S.D.N.Y. Mar. 31, 1998) (remanding, in part, because the "ALJ . . . conducted a 16-minute hearing (which also took up barely 13 pages of transcript) in which he failed to question [the claimant] about her claims of disability during that period"); Mann v. Chater, 1997 WL 363592, at *4-5 (S.D.N.Y. June 30, 1997) (noting that that in "determining whether a claimant received a fair and adequate hearing," the court may consider the number of witnesses and the length of the hearing).

Therefore, the Court recommends remand to allow Plaintiff to obtain a full and fair hearing.

### b)  The ALJ Erred in Determining Whether Plaintiff Met Listing 12.05C

Plaintiff argues that the ALJ erred in determining whether Plaintiff met or equaled Listing 12.05. Plaintiff's Brief, pp. 5-8. Plaintiff appears to be arguing that she meets criteria A, C, and D of Listing 12.05. Id. Defendant argues that substantial evidence does not support the finding that Plaintiff meets Listing 12.05. Defendant's Brief, pp. 12-15. Defendant also argues that Dr. Guenther, the SSA non-examining review

psychologist, found Plaintiff did not meet any criteria of Listing 12.05. Defendant's Brief,

p. 12.

Listing 12.05 states, in relevant part:

Mental retardation: Mental retardation refers to significantly subaverage
general intellectual functioning with deficits in adaptive functioning initially
manifested during the developmental period; i.e., the evidence
demonstrates or supports onset of the impairment before age 22.
    The required level of severity for this disorder is met when the
requirements in A, B, C, or D are satisfied.
    A. Mental incapacity evidenced by dependence upon others for
        personal needs (e.g., toileting, eating, dressing, or bathing) and
        inability to follow directions, such that the use of standardized
        measures of intellectual functioning is precluded;
            OR
        . . .
    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a
        physical or other mental impairment imposing an additional and
        significant work-related limitation of function;
            OR
    D. A valid verbal, performance, or full scale IQ of 60 through 70,
        resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or
            pace; or
        4. Repeated episodes of decompensation, each of extended
            duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ's entire Listing evaluation consisted of the following: "[t]he claimant does

not have an impairment or combination of impairments that meets or medically equals

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. Records from

treating and examining sources do not establish any listing level impairment" (R. at 23)

(internal citations removed). The ALJ did not state what Listings he considered or how

Plaintiff failed to meet those Listings.

On the record as developed by the ALJ, there is little evidence to support Plaintiff's argument that she meets criteria A or D of Listing 12.05. As for criteria A, in a disability form Plaintiff stated she had no problems with her personal care and did not require "any special help or reminders to take care of [her] personal needs and grooming" (R. at 49, 50). Also based on the current record, substantial evidence does not support the finding that Plaintiff meets criteria D. For example, Teena Guenther, Ph.D., the Social Security Administration ("SSA") non-examining review psychologist, found that Plaintiff had a moderate restriction of daily living activities; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; no repeated episodes of deterioration, each of extended duration (R. at 88). Thus, Dr. Guenther found that Plaintiff had no marked limitations and no repeated episodes of deteriorations, each of extended duration. Id.[7] However, the Court has previously recommended remand for failure to develop the record. Supra Part III.B.2.a. Thus, on remand and after a fully developed record has been obtained, the ALJ may need to reconsider whether Plaintiff meets either criteria A or D of Listing 12.05.

However, there is evidence that Plaintiff meets criteria C of Listing 12.05. Plaintiff has shown "deficits in adaptive functioning initially manifested during the developmental

---

[7] Plaintiff also appears to argue that the record is inadequate to determine "the severity of her ability to concentrate and maintain persistence or pace," to meet Listing 12.05D. Plaintiff's Brief, p. 7. This argument has previously been addressed by the Court in recommending remand for further development of the record. Supra Part III.B.2.a. However, as the record stands currently before the Court, there is no evidence of "[m]arked difficulties in maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1. For example, Dr. Guenther found that Plaintiff was only moderately limited in this category (R. at 88). Even if evidence existed supporting Plaintiff's claim, Plaintiff could not meet Listing 12.05D without evidence of another marked limitation or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1. As previously stated, substantial evidence does not support the finding that Plaintiff meets any of the other three prongs set forth in Listing 12.05D.

period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Courts have found circumstantial evidence, such as the following, sufficient to infer deficits in adaptive functioning prior to age 22: evidence a claimant attended special education classes; dropped out of school before graduation; or had difficulties in reading, writing, or math. Christner v. Astrue, 498 F.3d 790,793 (8th Cir. 2007); Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006); Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y. 1999); Devoe v. Barnhart, 2006 WL 1272614, at *6; Prentice v. Apfel, No. 96-CV-851, 1998 WL 166849, *4 (W.D.N.Y. Apr. 8, 1998); but see Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) (citing Diagnostic and Statistical Manual of Mental Disorders 42 (4th ed. 2000)) (concluding that the plaintiff had adaptive functioning where she lived on her own, took care of at least three children without help and without having them removed from her custody, paid her bills, and avoided eviction); see generally West v. Comm'r of Soc. Sec. Admin., 240 Fed. Appx. 692, 698 (6th Cir. 2007) (unpublished decision) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills."). Here, Plaintiff stated she began attending special education classes in the second grade and ultimately graduated with an individualized education program ("IEP") degree (R. at 114). An IEP evaluation was completed when Plaintiff was eighteen (R. at 61-64). At that time, the Mechanicville Public School noted that Plaintiff had difficulty with class and home assignments; she required assistance performing assignments; she was easily distracted when attempting to remain on task; had some short and long term memory difficulty; had some difficulty understanding concepts; and her comprehension was poor (R. at 63). These findings,

completed when Plaintiff was eighteen, suggest Plaintiff experienced "deficits in adaptive function . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1; (R. at 61).

In his decision, the ALJ noted Plaintiff's IQ test scores with Annette Payne, Ph.D., the SSA examining consultative psychologist (R. at 23). The ALJ stated that Plaintiff "obtained a verbal I.Q. of 72, a performance I.Q. of 74 and a full-scale I.Q. of 70, which placed her within the borderline intellectual range of functioning" (R. at 23, 67). According to the Listings, "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(c). Thus, the ALJ was required to use Plaintiff's full scale IQ score of 70 in determining whether Plaintiff meet Listing 12.05C. Plaintiff's IQ score of 70 falls within the range set forth in Listing 12.05C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (requiring "[a] valid verbal, performance, or full scale IQ of 60 through 70").

The Court is aware that this IQ test did not occur before Plaintiff attained the age of twenty-two. Indeed, Plaintiff was twenty-four at the time of the test (R. at 65). However, without evidence otherwise, the ALJ should presume Plaintiff's IQ remained reasonably stable throughout her life. See Santiago v. Astrue, No. 07-CV-6239, 2008 WL 2405728, at *3-4 (W.D.N.Y. June 11, 2008) (quoting Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) (endorsing the view that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [the plaintiff's] life); citing Figueroa Rivera v. Apfel, No. 98-CV-619E, 2000 WL 1568596, [at *3 ] (W.D.N.Y. Sept. 29, 2000)). "[A]n ALJ is not

required to accept a claimant's IQ scores when they are inconsistent with the record. . . . [but] [a]bsent any evidence of a change in the plaintiff's intellectual functioning, it is appropriate to assume that plaintiff's IQ has not changed . . . ." Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999).

As for the second prong of Listing 12.05C, some courts dispute the proper test for evaluating whether a claimant's impairment imposes "an additional and significant work-related limitation of function," but the Second Circuit has not ruled on this issue. Compare Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (adopting the severity test discussed below) with Flowers v. U.S. Dep't of Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990) (requiring claimant to be unable to perform his or her prior work to show the required additional and significant limitation). However, revisions to paragraph 12.00A have clarified the additional limitation requirement of Listing 12.05C. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746-01, 50,772 (August 21, 2000) ("We always have intended the phrase to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c)."). The regulations now direct an ALJ to "assess the degree of functional limitation the additional impairment[] imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a "severe" impairment[], as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A). Thus, the regulations indicate that the proper test for evaluating an impairment, other than low IQ, under Listing 12.05C is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." See 20 C.F.R. §§ 404.1520(c), 416.920(c); accord Baneky v. Apfel, 997 F. Supp. 543,

546 (S.D.N.Y. 1998) ("This Court holds that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under section 12.05(c) is the severity test . . ."). The ALJ's finding that Plaintiff's dysthymic disorder was severe therefore qualifies for the second prong of Listing 12.05C (R. at 22).

The Court also notes that the evidence submitted to the Appeals Council further supports the finding that Plaintiff meeting Listing 12.05C. A psychoeducational evaluation was completed by the Mechanicville Public Schools on January 29, 1990 (R. at 102). Plaintiff was born on April 10, 1981, meaning she was approximately eleven years old at the time of the evaluation. Id. The evaluation indicated a verbal IQ score of sixty-four, a performance IQ score of sixty-five, and a full scale IQ score of sixty-two (R. at 102-04). These scores are all within the range set forth in Listing 12.05C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (requiring "[a] valid verbal, performance, or full scale IQ of 60 through 70"). Suzanne O'Connor, the school psychologist who completed the evaluation, found that Plaintiff's

> performance on a test of cognitive ability fell at the first percentile. Her performance placed her in the mildly mentally retarded range. She had great difficulty on tasks of vocabulary, social comprehension, picture arrangement and coding. She performed slightly better on tasks of arithmetic and identifying missing parts on picture clues. At this time both her verbal and motor skills are falling in the first percentile when compared to same age peers.

(R. at 103).

Defendant argues that Dr. Guenther, the SSA non-examining review psychologist, found Plaintiff did not meet any criteria of Listing 12.05. Defendant's Brief, p. 12. Defendant is correct that Dr. Guenther did not find Plaintiff met Listing 12.05 (R.

14

at 82). However, Defendant's argument is unavailing as Dr. Guenther's Listing opinions are not determinative. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

Based on the foregoing, the ALJ erred in failing to explain why Plaintiff did not meet Listing 12.05C. See Brown ex rel. S.W. v. Astrue, No. 1:05-CV-0985, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008) (quoting Giles v. Chater, No. 95-CV-0010E, 1996 WL 116188, at *5 (W.D.N.Y. Jan. 8, 1996)) ("Where the claimant's symptoms as described in the medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings."). Therefore, the Court recommends remand to allow the ALJ an opportunity to explain why Plaintiff does not meet Listing 12.05C, and also to consider the new evidence.

### c) The Appeals Council Did Not Err Based on New Seizure Evidence

Plaintiff argues that the Appeals Council erred in not remanding based on new and material evidence from Dr. Verdini. Plaintiff's Brief, pp. 9-10. Specifically, Plaintiff argues that the new seizure evidence meets the second prong of Listing 12.05C. Id. Defendant argues that the new evidence submitted to the Appeals Council did not provide a basis for altering the ALJ's decision. Defendant's Brief, pp. 13-14, 22-23.

The regulations expressly require the Appeals Council consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing

decision." 20 C.F.R. § 404.970(b); <u>see also</u> § 416.1470(b); <u>Perez v. Chater</u>, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b) <u>see</u> § 416.1470(b). ""Weight of the evidence" is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." <u>HALLEX: Hearings, Appeals and Litigation Manual</u> I-3-3-4 (S.S.A. 2009), available at http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-4.html.

Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence". <u>Perez</u>, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. <u>Id.</u> at 45-46; <u>see e.g.</u> <u>Mancuso v. Comm'r of Soc. Sec. Admin.</u>, No. 1:06-CV-930, 2008 WL 656679, at * 6-7 (N.D.N.Y. Mar. 6, 2008) (reviewing the entire record, including the new evidence, and finding the Appeals Council properly considered new evidence and properly declined to review the ALJ's decision).

The evidence submitted to the Appeals Council consisted of records from Mechanicville High School and neurologist Dr. Verdini (R. at 8, 95-108). It appears that portions of the evidence submitted to the Appeals Council from Mechanicville High School had previously been submitted to the ALJ (R. at 61-64, 97-100). The new evidence became part of the record when the Appeals Council denied Plaintiff's request for review on July 20, 2007 (R. at 5-8). <u>See</u> <u>Perez</u>, 77 F.3d at 45-46. Because Plaintiff argues solely that the Appeals Council erred by failing to remand based on the new

16

seizure evidence, the Court will not reach whether other evidence submitted to the

Appeals Council was worthy of remand. Plaintiff's Brief, pp. 9-10.

On January 11, 2007, Dr. Verdini wrote a letter to Plaintiff's physician, Dr.

Sgambati,[8] concerning a recent neurological consultation for Plaintiff's history of

seizures (R. at 106-07). Plaintiff "denie[d] any seizures since early childhood" but

"describe[d] headaches, ringing in her ears, dizzy spells, depression, loss of memory,

[and] back pain" (R. at 106). Based on a recent abnormal electroencephalogram, Dr.

Verdini concluded that Plaintiff "is at an increased risk of developing seizures in

adulthood (approximately 3%)" (R. at 107, 101). Dr. Verdini recommended a brain MRI,

which was completed on January 29, 2007 (R. at 107, 108). The brain MRI showed a

> [s]olitary small nonspecific focus of white matter T2 hyperintensity in the
> left parietal coronal radiate. In a patient of this age, small focus of
> demyelinating disease such as multiple sclerosis would be the primary
> consideration. White matter bright foci such as this can also be seen in
> patient's [sic] with migraines. There is no abnormal enhancement which
> would mitigate against an active demyelinating lesion.

(R. at 108).

As discussed more fully above, to meet Listing 12.05C the claimant must prove

she has an impairment, other than low IQ, that qualifies as severe. See 20 C.F.R. Pt.

404, Subpt. P, App. 1, 12.00(A) (The ALJ must "assess the degree of functional

limitation the additional impairment[] imposes to determine if it significantly limits [the

claimant's] physical or mental ability to do basic work activities, i.e., is a "severe"

impairment[], as defined in §§ 404.1520(c) and 416.920(c)." A finding of not severe is

appropriate when an impairment, or combination of those impairments "does not

---

[8] Plaintiff refers to Dr. Sgambati as her primary care physician in her brief. Plaintiff's Brief, p. 9. However, the Court could find no record of Dr. Sgambati in the record. Indeed, when Plaintiff was asked whether she "had been seen by doctor/hospital/clinic for" her impairments, she responded "[n]o" (R. at 40).

significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Plaintiff is therefore arguing that her seizure impairment is severe.

Plaintiff has not experienced any seizures since early childhood and Dr. Verdini noted only a three percent increased chance of seizures in adulthood (R. at 106, 107). Plaintiff's slightly increased chance of seizures in adulthood does not amount to an impairment that significantly "limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  As such, it would not meet the second prong of Listing 12.05C. Therefore, the Court cannot find that the weight of the evidence shifted based on the seizure evidence.

### d)  Plaintiff was Made Fully Aware of Her Right to an Attorney

Plaintiff's final argument is that she was not made fully aware of her right to counsel, due in part to her mental incapacity. Plaintiff's Brief, p. 9. Defendant responds by arguing that the ALJ adequately informed Plaintiff of her right to legal representation. Defendant's Brief, p. 21.

"[A] reviewing court must be satisfied that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) (quoting Gold v. Sec'y of Health, Ed. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972). "While the law does not require the assignment of counsel to represent them in administration proceedings, Social Security claimants are 'entitled to be represented by counsel at the hearing and the ALJ must ensure that the claimant is aware of this right.'" Crysler v. Astrue, 563 F.Supp.2d 418, 430 (N.D.N.Y. 2008) (quoting Robsinon v. Sec'y of Health & Human Servs., 733 F.2d 255, 257 (2d Cir. 1984)). The Act requires that:

> [t]he Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

42 U.S.C. §§ 406(c), 1383(d)(2)(D). "Once a claimant has been adequately notified of the right to proceed with a representative, a claimant may waive that right." Osorio v. Barnhart, 2006 WL 1464193, at *8 (S.D.N.Y. May 30, 2006). This waiver "must be made knowingly and voluntarily." Rocker v. Apfel, 2000 WL 1459846, at *6 (S.D.N.Y. Sept. 29, 2000) (internal citations removed); see also, Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 509 (2d Cir. 2009) (finding Plaintiff "*knowingly and voluntarily* waived [her] right at the hearing before the ALJ") (emphasis added).

On July 12, 2005, the SSA informed Plaintiff that her initial applications for DIB and SSI had been denied (R. at 33-36). In that letter, the following was stated:

> [y]ou can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your Local Social Security office has a list of groups that can help you with your appeal.
>     If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee. We do not withhold money from SSI benefits to pay your lawyer.

(R. at 35). Plaintiff was again informed of her right to a representative in the notice of hearing sent to her by the ALJ (R. at 26-30). In that form, the following was stated: "[i]f you want to have a representative, please get one right away. You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number" (R. at 28).

This case is similar to a previous decision from the Northern District. In <u>Chrysler v. Astrue</u>, the Court found that identical language as stated in Plaintiff's initial denial and notice of hearing, and quoted above, "comports with the minimal requirements imposed by the Act in connection with advice regarding legal representation." <u>Chrysler v. Astrue</u>, 563 F.Supp.2d 418, 431 (N.D.N.Y. 2008); <u>see also</u>, <u>Lamay</u>, 562 F.3d at 509 (holding that supplying Plaintiff with notices containing similar language as quoted above, as well as a list of organizations providing legal services, met the requirements of 42 U.S.C. §§ 406(c), 1383(d)(2)(D)).

At the hearing, the ALJ stated:

> [l]et the record reflect that you have been previously been advised of your right to and the benefits of representation. We sent you the notices and the lists, and it is my understanding that you are aware of and understand your rights in this regard, and wish to proceed today without a representative. Is that correct ma'am?

(R. at 111). Plaintiff responded, "[y]es." <u>Id.</u> Although this discourse was short, and Plaintiff has been diagnosed with borderline intellectual functioning, the Court can find nothing in the record to support her claim that she did not understand and validly waive her right to representation. Plaintiff was given the opportunity to state she did not understand her rights. Indeed, Plaintiff replied "[y]es" to the question of whether she was "aware of and underst[ood her] rights" (R. at 111). If Plaintiff had difficulty comprehending her right to counsel, she had an obligation to state as much. <u>See</u> <u>Timmons v. Sullivan</u>, 1989 WL 156300, at *8 (S.D.N.Y. Dec. 19, 1989) ("[Plaintiff] cannot assert a denial of due process of law on the basis of waiving his counsel when he affirmatively represented to the ALJ that [he] understood his waiver of counsel and signed the form so indicating this comprehension."). Moreover, the surrounding

circumstances of the ALJ admonitions concerning representation do not appear to support Plaintiff; although, upon reconsideration, it may develop that she demonstrates sufficient difficulty in intellectual functioning that it calls into question her ability to have understood the admonition.

Based on the foregoing, the Court finds that Plaintiff was adequately notified of her right to counsel and knowingly and voluntarily waived that right. However, Plaintiff's valid waiver of her right to counsel did not absolve the ALJ of his duty to develop the record at the hearing and therefore the Court recommends remand on that basis. Supra Part III.B.2.a.; Rose v. Barnhart, 2003 WL 1212866, at *3 (S.D.N.Y. Mar. 14, 2003) (internal citations and quotations omitted) ("[W]hen a claimant appears pro se, the ALJ has a duty ....to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts .... on behalf of the claimant.").

## IV.   Conclusion

Based on the foregoing, it is recommended that Defendant's motion for judgment on the pleadings should be DENIED; Plaintiff's cross motion for judgment on the pleadings should be GRANTED in part and DENIED in part and REMANDED for reconsideration.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

       Syracuse, New York

DATED:      November 17, 2009

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

    **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

    <u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>
*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);  *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);  *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

    Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

       Syracuse, New York

DATED:    November 17, 2009